UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MAKARIOS BROWN                                CIVIL ACTION NO. 11-cv-0577

VERSUS                                        JUDGE HICKS

WARDEN, LOUISIANA STATE                       MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

Makarios Raymont Brown ("Petitioner") was charged in Caddo Parish with illegal use of a weapon during a crime of violence and possession of a firearm by a convicted felon. After the jury was selected and sworn, Petitioner elected to enter a guilty plea to both charges. The issues presented in this habeas petition are related to those convictions, but there were also two related proceedings: He was (1) convicted after a bench trial of possession with intent to distribute Schedule II drugs and possession of a firearm by a convicted felon, after which he was adjudicated a third-felony habitual offender and (2) convicted by a jury of illegal carrying of weapons while in possession of a controlled substance and possession of a firearm by a convicted felon.[1] He received the maximum sentence for each of the offenses, to be served consecutively, which amounted to 170 years.

---

[1] Those convictions as the subjects of separate habeas petition pending in 11-cv-0578 and 11-cv- 0579.

The convictions and sentences were affirmed on direct appeal. State v. Brown, 966 So.2d 727 (La. App. 2d Cir. 2007), writ denied, 978 So.2d 347 (La. 2008). Petitioner also filed a post-conviction application in state court. His federal petition includes a mix of claims presented on direct appeal and on post-conviction review.

The State argued in its memorandum that the claims exhausted on direct appeal had been presented only in terms of state law rather than the federal constitutional law as required to exhaust a claim that is cognizable on habeas review. See Baldwin v. Reese, 124 S.Ct. 1347 (2004). Petitioner responded in his traversal (Doc. 20) that he concedes the point and asks the court to dismiss his direct appeal claims because they were not properly exhausted. Accordingly, those claims are deemed dismissed. This review will address only the claims presented in the post-conviction application. For the reasons that follow, it is recommended that the petition be denied.

**Background Facts**

After Petitioner's counsel informed the court that Petitioner wished to plead guilty, the prosecutor made clear that the plea was being entered with no promise by the State as to any further action it might take, including charging Petitioner as an habitual offender, and no agreed sentence. The court advised Petitioner of his Boykin rights and the sentencing ranges he faced. The prosecutor then recited a factual basis, summarized below.

Petitioner and his wife, Tonya Brown, lived on Louise Street in Shreveport. They celebrated their first wedding anniversary at a party in another neighborhood. There was an

altercation between the couple during the party, and they returned to the Louise Street home in separate cars.

The dispute continued at home, and Petitioner retrieved a Mac-90 semiautomatic rifle chambered in 7.62 x 39 mm. Eric and Ebony Leftridge were also present, and Petitioner became angry with them for getting involved in his business. Mr. Leftridge became concerned and called Tonya's brother, Stephen Lowe (spelled Lough in some reports). Leftridge then went to Lowe's house, picked him up, and brought him back to Petitioner's Louise Street home.

Mr. Lowe entered the home and asked if his sister and the children were okay. It angered Petitioner that even more people were interfering in his domestic affairs. Petitioner armed himself again with the rifle, and Mr. Lowe soon removed himself from the home. Petitioner followed Lowe outside, where the Leftridges were nearby in their car. Tonya came outside, and her mother and Mr. Lowe's girlfriend also soon arrived.

With this group assembled, Petitioner's temper flared at Mr. Lowe, and he fired the rifle in the general direction of Lowe more than one time. Mr. Lowe ran around the side of a building and hid in a low-lying area.

Ms. Lowe told Petitioner that she had called 911. Petitioner, still armed, got in his rented Mercury Sable and continued to have words with some of the witnesses. There was eventually a police chase that ended with the Mercury being found crashed into a utility pole. Petitioner had disappeared.

Police obtained an arrest warrant for Petitioner. They were later called to the Louise Street home and let inside by Mrs. Brown. She told the officers that Petitioner was hiding in the laundry room. After about 20 minutes of shouting and searching, Petitioner was found in the attic and arrested. Tr. 242 - 51.

**Signature on Ruling**

Petitioner's post-conviction application was assigned to Judge Michael Pitman. A written opinion (Tr. 2056 - 67) issued that denied all claims. The signature block on the opinion was prepared for Judge Pitman but signed "Eugene W. Bryson, Jr. for" Judge Pitman.

Petitioner has not clearly labeled his complaint about this as a numbered issue, but his memoranda complained that Bryson was merely the judicial administrator for the Caddo Parish District Court so that the case should be remanded to require Judge Pitman to affix his own signature. This claim fails because "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001). An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue in federal habeas. Id. at 320; Drevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999). In addition, the undersigned is aware that Bryson is a retired district judge who, even after serving as judicial administrator, sat as a pro tempore judge on occasion. This claim does not provide a basis for vacating the convictions.

**Ineffective Assistance of Counsel**

    A. Introduction

Attorney John Cucci, Jr. represented Petitioner in the trial court proceedings. Petitioner argues that Cucci rendered ineffective assistance by not investigating the charges, not moving to quash the arrest warrant or bill of information, and persuading Petitioner to plead guilty. Petitioner also complains that Cucci was later arrested on drug charges and disbarred. Those facts do not automatically render Cucci's prior work ineffective or entitle his past clients to have their convictions vacated. Petitioner must demonstrate specific deficient performance in his case that prejudiced the outcome. Bridge v. Lynaugh, 838 F.2d 770, 776 (5th Cir. 1988) (counsel later disbarred for cocaine felony; relief denied absent specific examples of deficient performance); Jones v. Cain, 2009 WL 792205, *12 (E.D. La. 2009).

    B. Burden on Petitioner

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the

determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

### C.  Challenge to Arrest Warrant

Petitioner argued on postconviction that there were deficiencies in the affidavit and application submitted for his arrest warrant, and trial counsel was ineffective for not filing a motion to quash the warrant. The trial court noted that the appellate court had found on direct appeal that the factual basis for the charges were sufficient to show guilt, so it was unreasonable to conclude that a motion to quash the arrest warrant would have altered the outcome. Tr. 2061. The appellate court denied a writ application with a general observation that the Strickland claims were without merit. Tr. 2250. The Supreme Court of Louisiana denied writs without comment. Tr. 2402.

A warrant was not necessary to arrest Petitioner for the felonies. The police needed only probable cause, which they certainly had based on the detailed eyewitness observations set forth in the police reports (Tr. 15-31) that Petitioner beat his wife, pointed a rifle at people, and fired the gun in the direction of a witness. Attacking the warrant would not have resulted in Petitioner's release from custody or avoiding the charges. In any event, the only issue Petitioner has with the warrant is a mistake in the application where the officer, after detailing the facts regarding Petitioner and identifying him by his correct name several times, used a different name (Michael Banks) in the concluding request that a warrant issue. The error appears to be due to using a prior form but not making all necessary changes. Tr. 50 - 53. That one mistake was not fatal to the otherwise valid warrant. Counsel would have achieved nothing by filing a motion to quash; the Sixth Amendment does not require counsel file meritless motions. Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

### D. Challenge to Bill of Information

Petitioner argues that counsel should have moved to quash the bill of information on the grounds that it overzealously charged him with a count of illegal use of a weapon that required an element of aggravated assault with a firearm, meaning the weapon was intentionally discharged where it was foreseeable that it may result in death or great bodily harm to a human being. He contends that various police reports reflect that Petitioner was waiving the gun in the air, fired it down toward the ground and hit a garage door, but Mr.

Lowe was standing about 12 feet away and was not struck. The trial court rejected this claim with the observation that Petitioner did not dispute the facts recited by the State at the entry of the guilty plea.

The prosecutor, in providing the factual basis, stated that Petitioner fired the weapon "in the general direction" of Mr. Lowe more than one time and "in a direction that directly threatened the life of Mr. Stephen Lowe and put him in a reasonable apprehension of receiving a battery." Tr. 249. Mr. Lowe obviously felt as if he were in danger because he quickly left the area and hid. The prosecutor also noted that there was a home immediately next door that was occupied by a mother, father, and several children. There was also a potential danger that people inside Petitioner's own home could have been hit by rounds fired at his enclosed garage. After these facts were recited, Petitioner was asked if they were correct. He answered, "Yes, they're basically true." Tr. 251. Other parts of the police reports not quoted at the plea hearing include witness statements that Petitioner "pointed the rifle at witness # 2 Lough and started shooting at him" and "shot at Mr. Lough." There were also reports that Petitioner pointed the rifle at his wife and Mr. Lough's nephew, and he called Mr. Lough while on the run and said he would kill Lough the next time he saw him.

It is a virtual certainty that a motion to quash the bill of information would have been denied. Petitioner's arguments are more in the nature of a trial defense, not a fatal flaw in a charging instrument that would require dismissal without even a trial. Furthermore, the facts admitted at the guilty plea hearing are more than adequate to show that Petitioner was

guilty as charged. Counsel was not ineffective for not filing such a meritless motion to quash, and the state court's rejection of this claim was not an objectively unreasonable application of Strickland.

### E. Counseling the Guilty Plea

Petitioner complains that counsel conducted an inadequate investigation and misrepresented the strength of the State's case. To show prejudice on a Strickland claim in a guilty plea case, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S.Ct. 366, 370 (1985).

Petitioner argues that an investigation would have revealed "crucial information" that Petitioner only waived the gun in the air when it was fired and did not point the weapon at anyone. That may have been one witness's account, but others said that Petitioner pointed the rifle in the direction of Mr. Lowe and fired two shots at him or at least in his general direction. There is no evidence that counsel was unaware of the various police reports regarding witness observations, and there is no basis to determine that Petitioner would have insisted on going to trial had he only known that one witness said the gun was fired in the air. The claim that counsel overstated the strength of the State's case is a repeat of Petitioner's contention that he was not guilty of aggravated assault. This argument is rebutted by the facts admitted at his guilty plea hearing and in the police reports. The state court's rejection of these Strickland claims was reasonable.

### F. Sentencing Representation

Petitioner argued in his post-conviction application that defense counsel told him as the trial was about to begin that, based on the facts and evidence, he would be found guilty and the judge would sentence him more harshly for wasting the time of the court and jury. Petitioner contended that counsel told him that if he pleaded guilty he "would not receive much time any way (sic), even if the State filed a multiple bill of information." Tr. 1837. Petitioner later filed a supplemental application and included affidavits from Merrica Brown and Sharon McFan who each testified that attorney Cucci informed them that Petitioner would be found guilty and be sentenced more harshly for wasting time by going to trial. They added that Cucci said it would be easier on everyone if Petitioner pleaded guilty and that he "would not receive much time any way (sic), even if the State filed a multiple bill of information." Neither offered any specific facts beyond parroting Petitioner's memorandum. Tr. 1868 - 75.

The trial court ruled that the supplemental application would not be considered. He noted that the guilty plea transcript reflected thorough questioning by the court and Petitioner's admission that no coercion or promises led to his guilty plea. Tr. 2061. That transcript is clear that the State said there was no promise as to future action and no agreement on sentence. The judge also made clear that he "made no promises whatsoever regarding your sentence" and that the prosecutor could file a multiple offender bill.

Petitioner said that he understood that, and he denied that anyone else made any promises to him about his sentence.

Petitioner points to the affidavits filed in state court and makes a claim that he believed he faced a two-year sentence, with up to six years exposure if a multiple offender bill was filed. There is no evidence to support Petitioner's statement about his belief that there was a two-year sentence possibility. The judge who accepted the guilty plea went over the sentencing ranges for both crimes (10 to 20 years; 10 to 15 years) and Petitioner stated that he understood the penalty ranges. Tr. 246-47. As for the affidavits, the state court acted within its discretion to disregard the late-filed submissions and appropriately discounted the conclusory testimony in light of the specific and detailed guilty plea colloquy. Relief is not available on this claim.

**Cumulative Error**

Petitioner's final argument is that his claims, even if none individually warrant relief, have a cumulative effect that should result in vacating his guilty plea conviction. Federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process. Martinez Perez v. Dretke, 172 Fed. Appx. 76 (5th Cir. 2006), citing Derden v. McNeel, 978 F.2d 1453, 1457 (5th Cir.1992) (en banc). This is not a case where constitutional errors were

committed but deemed harmless or undeserving of relief standing alone. No constitutional error has been found, so relief is not available on this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus relief be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules

Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of July, 2014.

Mark L. Hornsby
U.S. Magistrate Judge